## Sugarloaf Township School District v. Conyngham Borough (No. 3)

*Leroy Long,* for petitioner.
*John E. Cotsack,* for respondent.

FLANNERY, J., March 14, 1951.—This matter comes before the court on appeal of the School District of Sugarloaf Township from an ordinance of the Borough of Conyngham annexing 13.90 acres of land previously situate in Sugarloaf Township contiguous to the Borough of Conyngham. Appellant alleges that the ordinance is invalid, void and unenforcible for the following reasons:

"(a) It is improper, unreasonable, unconstitutional and beyond the power of said Borough of Conyngham to enact;

"(b) The procedure for the annexation of lands in townships of the second class, the School District of Sugarloaf Township is situated in a township of the second class, by petition to council as set forth in The Borough Code has not been complied with in that no petition complying with the requirements of Section 5 of said Act of July 10, 1947 (53 P. S. 12461, pocket part) was presented to the council of the said Borough of Conyngham for its said consideration;

"(c) The purported ordinance was not validly enacted in that proper notice of the meeting at which it was considered was not given and the ordinance was prematurely filed since prior to filing it had not been published as required by The Borough Code;

"(d) That the said ordinance is invalid because proper description of the land to be annexed and of the Borough of Conyngham had not been supplied as required by the said Borough Code;"

Appellant was later permitted to file the following amendment as an additional reason:

". . . that the said ordinance is improper and invalid since it will have the effect of taking away valuable land from the Township and as a result it will be difficult and financially burdensome for the Township to maintain its roads and highways and defray the ex-

pense of operating its public schools, and that it was enacted for a private and not a public purpose."

Testimony to support the allegations was taken by the court, and at the conclusion thereof counsel for appellee moved to dismiss the appeal for the reason that appellant had not sustained the burden of proving the averments of the appeal. This motion is now before the court.

By virtue of section 23 of the Borough Code of July 10, 1947, P. L. 1621, 53 PS §12900, the court has jurisdiction to review the propriety as well as the legality of the ordinance. Appellant has the burden of proving the illegality and impropriety for the law presumes that the acts of public officers are valid and regular in annexation proceedings: Irwin Borough Annexation Case (No. 1), 165 Pa. Superior Ct. 119; Mountainville Election District's Annexation, 304 Pa. 559.

The first reason advanced by appellant is without merit. Section 5 of the Borough Code (53 PS §12461) specifically authorizes the borough to enact an ordinance of this type upon petition of a majority of the freeholders in the territory to be annexed. The unreasonableness and impropriety of the ordinance we shall discuss in connection with the other reasons advanced.

The record reveals no proof of appellant's second contention. Rather the fact that a petition in conformity with section 5 of the code was presented to council is uncontradicted and unimpeached in the testimony.

Appellant has not fulfilled its burden of proving its averments that the ordinance was not properly filed and advertised in accordance with the provisions of the code. On the contrary, the only evidence produced is to the effect that the advertising and filing were regular, complete and in strict accordance with section 5 (53 PS §12462) and section 23 (53 PS §§12896, 12898) of the code. On July 5, 1950, the ordinance was passed by

council and approved by the burgess on July 6, 1950. On July 7, 1950, a certified copy of the ordinance adopted, together with a description and a plot showing the courses and distances of the boundaries of the borough before and after the annexation, was filed in the court of quarter sessions. The enactment and approval of the ordinance was published on July 8, 1950. There is some confusion as to the exact date when the ordinance was copied into the ordinance book. The borough secretary first testified that he entered it in the book on July 9, 1950, and then later stated that it might have been entered on July 7, 1950. However, we do not see how this is fatal to the validity of the ordinance. The important fact is that it was entered in the ordinance book within one month after its passage (section 23(a) of the Borough Code). We do not agree with the argument of counsel for appellant that an ordinance is invalid because it was filed in the ordinance book prior to publication. Section 23 of the code, provides, inter alia:

"It shall be the duty of the borough council: . . . IV. Except where otherwise in this act provided, to publish, every ordinance or resolution of a legislative character once in one newspaper of general circulation in the borough. . . .": 53 PS §12896.

"No ordinance or resolution of a legislative character, in the nature of an ordinance, shall be considered in force until the same is recorded in the ordinance book of the borough and has been advertised as provided in this article. . . .": 53 PS §12898.

We find no statutory requirement to the effect an ordinance must be published before it may be entered in the ordinance book. Nor do we find any decisions reported which so construe the above-quoted section of the code.

The secretary of council, called on behalf of appellant, testified that the annexation ordinance was passed on Wednesday, July 5, 1950; that the usual or regular meeting night was the prior Monday, but because that day fell on July 3, 1950, and conflicted with a holiday weekend, the meeting was scheduled for Wednesday evening. He further testified as follows:

"Q. Do you know whether any official notice was sent to the councilmen that the meeting night was changed to Wednesday?

"A. Each member knew it.

"Q. Each member knew it?

"A. Knew that the meeting was going to be held on Wednesday.

"Q. How would you know they knew it? . . .

"A. Because I told them. It was agreed to and I notified the members.

" (By the court) Were they all there?

"A. All with the exception of Mr. Bainbridge."

We are of the opinion that this testimony is insufficient to sustain appellant's averment that the ordinance is invalid because proper notice of the meeting at which it was considered was not given. Too much is left to conjecture. Whether or not the notice which the secretary testifies he gave to the councilmen was written or oral is not definite. Whether the councilmen were informed of the nature of the business to be transacted and whether the meeting should be properly classified as a regular, adjourned or special meeting is not apparent from the record and we cannot say that the meeting and the business transacted were illegal and contrary to the code.

Appellant bases his argument largely on the proposition that council did not act with propriety in passage of the annexation ordinance. The school district con-

tends that the annexation would work a financial hardship on the district in that valuable land would be taken away, resulting in a loss of income through taxes. It is argued that the financial loss at this time is important because the school district has contracted for a new school building and will probably encounter difficulty in financing it. We cannot agree that the loss of revenue to the school district would result in such hardship as would justify us in invalidating the ordinance.

The record shows that the present assessed valuation of the territory to be annexed is $10,515, while the total assessed valuation of real estate in the township is $964,625. At the present rate of 19 mills the annual school tax revenue on the land proposed to be annexed is $199.79. This is a very small amount compared to the budget of $48,442.20 upon which the district is operating and would not seriously disrupt the finances of the district. This is especially true in view of the fact that if the territory is annexed the district will be relieved of the necessity for providing facilities, supplies, etc., for children of the persons living in the territory.

The school district also contends that the territory to be annexed to the borough must have a unity of interest with the borough to make it a proper subject of annexation, and that there is no such unity of interest in this case. It is argued that the borough has no interest in these proceedings but rather that the only person desiring the annexation is the property owner who, with his family, are the only residents of the territory. It cannot be denied that the property owner is greatly interested in this matter, nor can it be denied that the borough would undertake passage of the ordinance without some sort of interest. The president of the borough council testified that the annexation was discussed and it was decided by the council that the

borough would suffer no detriment and that there would be no additional burden cast upon the borough by the annexation, but on the contrary there would be a gain.

In the recent case of Irwin Borough Annexation Case (No. 1), supra, it was held that the court should not arbitrarily or capriciously thwart the will of the freeholders and the borough. The court continued (at pages 132-33) :

". . . On the other hand, it does not faithfully perform the inescapable duty cast upon it by the legislature if it blindly accepts the judgment of the council whose action it is commanded to review. It must exercise its independent judgment upon the evidence and the questions raised by it."

Not only has the legislature placed upon the court the duty to review the advantages and disadvantages to the municipal subdivisions involved but it has also placed upon the court the consideration of the will of the freeholder. Since the legislature has seen fit to allow annexation upon petition of the freeholders, it is fair to say it had great regard for their desires. We are of the opinion that it is the policy of both the appellate courts and the legislature to accede to the wishes of the freeholders when it can be shown, as here, that there will be little, if any, detriment done to the township, no detriment but rather a benefit to the borough, and certainly advantage to the freeholder.

In so deciding we are not unmindful of the township's concern for the possibility of further annexation in the future, and we do not indicate that we favor cutting up townships and school districts to an extent where the welfare of either will suffer. In any event, we feel that such is not this case and,

Accordingly, now, March 14, 1951, the appeal of the School District of Sugarloaf Township is dismissed and the annexation proceedings approved.