## Loomis v. Philadelphia School District Board of Education, Appellant.

Argued November 20, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*C. Brewster Rhoads*, with him *Edward B. Soken*, for appellant.

*Augustus S. Ballard*, with him *Pepper, Bodine, Stokes & Hamilton*, for appellee.

*Lewis F. Adler*, for Pennsylvania State Education Association, amicus curiae.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

The plaintiff, a teacher in the Philadelphia public schools who was also a member of a Reserve Component of the United States Army, brought an action in as-

sumpsit against the Board of Education of the School District of Philadelphia to recover pay for 15 days in each of the years 1950 and 1951 during which periods he was engaged in field training ordered by competent military authority and absent from his professional duties. The action was brought under the Act of July 12, 1935, P. L. 677, 65 PS §114, which provides: "All officers and employes of the Commonwealth of Pennsylvania, or of any political subdivision thereof, members, either enlisted or commissioned, of any reserve component of the United States Army, Navy, or Marine Corps, shall be entitled to leave of absence from their respective duties without loss of pay, time, or efficiency rating on all days not exceeding fifteen in any one year during which they shall, as members of such reserve components, be engaged in the active service of the United States or in field training ordered or authorized by the Federal forces.".

Plaintiff's complaint set forth that he was employed by defendant in 1947 by written contract covering a school term of ten months and continuously thereafter, performing his duties in each school year, commencing September 1st to June 30th, following; that throughout such time he was a lieutenant colonel in a Reserve Component of the United States Army; that he made written request for military leave of absence in accordance with the Act of 1935 covering a period in June of 1949 which was granted by defendant with full pay; that he made similar requests for military leave of absence covering periods commencing in June, 1950 and June, 1951, respectively, which were granted by defendant, but with full loss of salary for the 15 days in each year when he was absent from his professional duties as a teacher. He claimed the proportionate part of his salary covering the 15 day period in each of the years 1950 and 1951.

The defendant filed preliminary objections, claiming the complaint failed to state a cause of action, that the Act of 1935 violates Article III, Section 7 of the Constitution of the Commonwealth as a special law granting to individuals a special or exclusive privilege or immunity and Article III, Section 18 as a provision for payment of public funds for unauthorized purposes, and that since plaintiff was not required to perform any duties as an employe of the defendant during the periods from July 1st to August 31st, inclusive, in the years 1950 and 1951, he received adequate leave of absence without loss of pay during those years and the defendant was not required by the Act of 1935 to grant any further leave to plaintiff without loss of pay.

The lower court dismissed defendant's preliminary objections. The defendant did not file an answer and judgment in the amount of plaintiff's claim was taken against it for want of an answer. On appeal the Superior Court affirmed the lower court and we allowed this appeal because of the constitutional question involved.

Nothing but a clear violation of the Constitution will justify the judiciary in nullifying a legislative enactment. Every presumption must be indulged in its favor, and one who claims an Act is unconstitutional has a very heavy burden of proof: *Tranter v. Allegheny County Authority et al.*, 316 Pa. 65, 173 A. 289; *Busser et al. v. Snyder et al.*, 282 Pa. 440, 128 A. 80; *The Pennsylvania Railroad Co. v. Riblet*, 66 Pa. 164. When a statute is challenged as prohibited special legislation, the reasonableness of the classification made is for the Legislature in the first instance; the duty of the court is limited to considering whether the Legislature had any reasonable ground for making it: *Chester County Institution District et al. v. Commonwealth et al.*, 341 Pa. 49, 17 A. 2d 212; *National Transit Company et al.*

*v. Boardman, Secretary of Revenue,* 328 Pa. 450, 197 A. 239.

Our decisions have held that the Legislature may legislate for public employes as a class: *Commonwealth v. Perkins,* 342 Pa. 529, 21 A. 2d 45; *Commonwealth ex rel. Graham (to use of Markham et al.) v. Schmid,* 333 Pa. 568, 3 A. 2d 701; *Retirement Board of Allegheny County v. McGovern et al., Commissioners,* 316 Pa. 161, 174 A. 400. In *Commonwealth ex rel. Graham v. Schmid,* supra, it was decided that preference of veterans in applications for civil service did not render a statute invalid as special or class legislation, holding that the Legislature could reasonably conclude that the advantages of discipline, experience and service incident to military activity could be expected to enure to the benefit of the public. Chief Justice KEPHART, speaking for an unanimous Court, at p. 573 said: "As a basis for appointment it is *not unreasonable* to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. *No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential. . . .".* (Emphasis supplied).

The Legislature has recognized the worth of military service on the part of public employes by the enactment of the Act of 1935 in question. Courts may not question the wisdom of the legislative classification unless there can be found no reasonable ground for it. ". . . The test is, not wisdom, but good faith in the classification.": *J. A. Seabolt et al. v. The Commissioners of Northumberland County,* 187 Pa. 318, 41 A. 22. And see 12 Am. Jur., Constitutional Law, §495.

In support of its position, appellant cites *Commonwealth ex rel. Maurer v. O'Neill,* 368 Pa. 369, 83 A.

2d 382, and *Kurtz v. Pittsburgh et al.*, 346 Pa. 362, 31 A. 2d 257. In the *O'Neill* case it was held unconstitutional to prefer veterans over nonveterans for advancement to higher public positions as distinguished from original appointments, because it placed too high a valuation on past military service, and, through loss of incentive on the part of nonveteran employes equally skilled and qualified for promotion, the preference created was in fact prejudicial to the public service. The Act of 1935 now under consideration cannot be said to appreciably affect the incentive of other employes. They enjoy, presently and potentially, the same positional status and efficiency rating as the reservists, with equal opportunity for advancement. Since we held in the *Schmid* case that preference to veterans as to initial appointments as to government employment was justified because the advantages of discipline, experience and service incident to the past military activity of veterans could be expected to enure to the benefit of the public, clearly it must be held that the *current* intensive military training of a reservist similarly contributes to his efficiency as a public employe. And since the taxpayer thus benefits, the two weeks of military training granted to reservists without loss of pay cannot be held to be a mere gratuity falling within the prohibition of Section 18 of Article III of the Constitution.

In the *Kurtz* case the Court passed upon the constitutionality of the Act of June 7, 1917, P. L. 600, as amended, which provided that the dependent wives and children of regular employes of the State and political subdivisions when such employes entered the Armed Forces of the United States in time of war or contemplated war should be paid during the absence of such employes in such service one-half the employe's salary, not to exceed $2,000 per year, and that the de-

pendent parents of such employes so serving in the Armed Forces should be paid annually such sums as the employes had been accustomed to pay such parents; such payments, when added to the remuneration paid the employe by the Armed Services, were not to exceed the salary or wages paid him when he entered the service. The majority of a divided Court held that the legislation failed to meet the constitutional test of reasonable classification.

Under the 1917 Act the allowances bestowed went to the dependent kin of the public employe and were based entirely on his past employment. When he entered the Armed Services in time of war or contemplated war, his service to the State terminated indefinitely, perhaps permanently. There was no certainty of his return to civilian government service, despite any expression of his intention so to do when he left. The public had no assurance of benefiting from his military experience. Under the Act of 1935 the benefits flow directly to reservists while they continue in civil public service and are limited in duration to 15 days in each year. As above observed, there is a corresponding benefit to the public presently received.

The majority opinion in the *Kurtz* case held that the payments provided for in the 1917 Act were gratuities prohibited by Article III, Section 18 of the Constitution, and that it was a ". . . classification purely arbitrary and without reason and . . . a perfect example of the evil practice of permitting payment of public funds for the benefit of one class of people *without any special corresponding benefit being derived by the public from that class of people. . . .*". (Emphasis supplied). Appellant relies upon other expressions in the majority opinion in the *Kurtz* case employed to fortify the conclusion reached. We are of the opinion that the decision must rest upon the determination that the

public received no benefit from the payments proposed under the 1917 Act and they were therefore gratuities constitutionally prohibited. For the reasons above stated we cannot so hold as to the Act of 1935.

The test of class legislation being its reasonableness, it may be pointed out that military leave of absence for 15 days with full pay is quite analogous to sick leave without loss of pay as an incident or condition of employment. In the opinion of the Court in the *Kurtz* case it is stated: ". . . As nearly every individual is subject to occasional illness, sick leaves become an inevitable incident to all employment. If the state as an employer chooses to grant such leave with pay, for limited periods (such laws are usually for ten days or two weeks annually) this action does not involve an unconstitutional misuse of public funds. When a person enters into the service of the state at a weekly or annual salary he contracts to give his employer all the service required of him during working days, subject only to occasional interruptions by the illnesses common to man. Vacations and sick leaves reasonable in length of time, without deduction of pay, are now generally recognized as implied in contracts of public employment. If vacation and sick leave with pay were unreasonably protracted in duration they would justify the charge that public funds were being illegally used in payment for services not performed. Such leaves would be particularly offensive to the constitution if they were granted to *special classes* of employees, *with no reciprocal benefit to the state*.".* We cannot consider the 15 day leave of absence granted to reservists as unreasonably protracted in duration. It may be noted that sick leave or limited vacation relates solely to the well being or comfort of the employe, whereas

---

* (This latter emphasis supplied).

military leave confers a benefit upon the public employer and taxpayer in the quality of service rendered. At the same time it is in the interest of national defense.

The discipline, loyalty and public spirit necessarily acquired by the military reservist are conducive to the better performance of his duties as a public employe. The public unquestionably derives benefit therefrom and this justifies the classification in question.

Apparently the Act of 1935 has been administered without challenge until questioned in the present proceeding. Indeed, as appears in plaintiff's complaint, the defendant complied therewith as late as 1949. On April 11, 1950 the defendant board of education of the school district, by resolution adopted the following regulation: "Every employe who is a member of the Organized Reserves of the Army, Navy or Marine Corps shall take his annual two weeks of military training during his summer vacation: Provided that in unusual circumstances the Superintendent of Schools or the Secretary and Business Manager, for their respective departments, may grant a leave of absence at a time other than during the employe's vacation for two weeks with full salary to any employe who is a member of the Organized Reserves. Unusual circumstances, as used in this rule shall be construed to mean that the services of the employe at a time other than during his vacation are so essential to the National Defense that it would be in the best interests of our country to authorize special leave with full salary for two weeks.". Obviously this was an attempt to circumvent the impact of the Act of 1935. It is somewhat paradoxical for the defendant to attempt to exercise in its discretion a power which it claims does not exist in the body from which all of its authority is derived. Moreover the Act calls for leave of absence for public employes

from "their respective duties". The appellee had no teaching duties during the vacation period to which the defendant would restrict his leave of absence.

Appellant argues that under the powers conferred upon boards of school directors with respect to leaves of absence, conduct of teachers, etc., by the Public School Code of 1949, the defendant had the authority to pass and rely upon the resolution above recited. This contention is principally based upon the general repealer in the School Code that "All other acts and parts of acts inconsistent herewith are hereby repealed.". The Public School Code is a codification of laws pertaining to the public schools. It cannot be seriously contended that every matter pertaining directly or indirectly to the administration of the public schools has been embraced therein. To so hold would have destructive effect upon many general laws, the import and effective scope of which embrace larger fields than that of a school district or municipality or other political subdivision of the State. Such is the Act of 1935. It applies as a matter of public policy to all public employes. The Act of 1935 is neither specifically nor by implication repealed by the 1949 School Code, and the powers under the latter Act relied upon by the defendant must be exercised in conformity with the provisions of the former.

The judgment of the Superior Court sustaining the action of the lower court is affirmed.