## Lutz *v.* Armour, Appellant.

Argued October 6, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

John A. Metz, Jr., with him David Friedman, and Metz, Cook, Hanna & Kelly, for appellants.

William W. Milnes, with him Paul W. Brandt, and Brandt, Riester, Brandt and Malone, for appellees.

OPINION BY MR. JUSTICE COHEN, May 8, 1959:

The plaintiffs-appellees operated a garbage collection and disposal business in the Township of Findlay for approximately fourteen years with the approval of the township commissioners. They have contracts with surrounding municipalities and townships providing for garbage removal and disposal on their land. In addition, numerous pieces of garbage removal equipment and storage facilities have been furnished by the appellees. Their land is situated one to three miles from the nearest neighbors and is principally a series of abandoned strip mine locations. They had been granted licenses to operate by the Township of Findlay and also have licenses from Allegheny County and the Bureau of Mines of the Commonwealth of Pennsylvania.

On September 4, 1956 the Township of Findlay enacted Ordinance No. 13 pursuant to the Second Class Township Code as amended by the Act of July 1, 1955, P.L. 249, §1 *et seq.*, 53 P.S. §65708 which permits a second class township to "regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township." The enacted ordinance permits the collection of garbage, rubbish, waste material or ashes within Findlay Township and the operation of garbage disposal facilities. However, Section 13 of the ordinance prohibits the hauling and disposition into Findlay of any of those materials which originate "from without the township."

The plaintiffs-appellees were arrested and fined for violation of Section 13 of the ordinance. The appellees then instituted this action in equity to enjoin the enforcement of the ordinance. The court granted a preliminary injunction, which became permanent after the chancellor's adjudication that Section 13 was unconstitutional in its application to the appellees. The Township of Findlay filed exceptions which were dismissed by the court *en banc*. This appeal followed.

It is a well established principle in our law that an act passed by a legislative body is presumed to be constitutional. *Loomis v. Phila. School District Board of Education,* 376 Pa. 428, 103 A. 2d 769 (1954); *Mountainville Election District's Annexation,* 304 Pa. 559, 156 Atl. 162 (1931). This presumption of constitutional validity applies with equal force to ordinances. *Bilbar Construction Co. v. Easttown Twp. Board of Adjustment.* 393 Pa. 62, 141 A. 2d 851 (1958). Nevertheless, as was said by Mr. Chief Justice HORACE STERN: "By a host of authorities, Federal and State alike, it has been held that a law which purports to be an exercise of the police power must not be unrea-

sonable, unduly oppressive or patently beyond the necessities of the case, and *the means which it employs must have a real and substantial relation to the objects sought to be attained.* Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations." (Emphasis supplied). *Gambone v. Commonwealth,* 375 Pa. 547, 551, 101 A. 2d 634 (1954). See also *Warren v. City of Philadelphia,* 382 Pa. 380, 115 A. 2d 218 (1955).

We recognize the danger involved in unsupervised garbage disposal areas and that the regulation thereof is the proper exercise of the police power: *Wiggins v. Town of Somers,* 4 N.Y. 2nd 215, 149 N.E. 2d 869 (1958); *Borough of Dallastown v. Chanceford Township,* 68 York Legal Record 5 (1954); however, unless there is shown some relationship between garbage, rubbish, waste material or ashes collected from outside of a township we cannot supply the elements that would make this a proper legislative regulation. Appellants would have us believe that they are regulating the quantity of garbage disposed in the township by limiting the disposable garbage to that which originates within the township, and thus they are serving to protect the health and general welfare of the township residents. Superficially, we cannot quarrel with this view, but in effect the ordinance as drafted declares that garbage from without, regardless of quantity, is harmful and deleterious, but that local garbage, regardless of amount, conforms more to the community's health and general welfare standards. The distinction sought to be made is both artificial and devoid of merit.

As was said in *Ex parte Lyons,* 27 Cal. App. 2d 182, 80 P. 2d 745, 749 (1938), a case involving similar facts: "The sole inhibition attempted has to do with

the place of origin of the garbage . . . . The existence of the county line in a particular position has no kind of relation to the evil which the ordinance apparently seeks to remedy. In these circumstances the ordinance provisions appear to us purely arbitrary, and by that token unenforceable. . . ." The court there held the ordinance unconstitutional, arbitrary and discriminatory. In *Wiggins v. Town of Somers,* supra, the Court of Appeals of New York held a similar ordinance to be constitutional by a four to three vote. The situation presented there can readily be distinguished from the one in Findlay Township because the New York record was replete with references to complaints, odors, insects, vermin, rodents, and smog and smoke from the burning of garbage. There are no such facts existing in this case. On the contrary, there is every evidence that the appellees received no complaints throughout the period in which they operated this garbage disposal area and it is also clear that every sanitary precaution was taken. Even so, three judges in their dissenting opinion in *Wiggins* said at page 874: "This prohibition against the dumping inside the town of Somers of garbage 'originating' outside this town and its attempted distinction between 'local' and 'foreign' garbage is obviously unrelated to public health or sanitation. It is, therefore, an unconstitutional interference with the lawful business conducted by plaintiff under permits issued by the County Health Department and in compliance with the rules of that department. The ordinance does not regulate the quantity of garbage dumped nor the manner in which it is handled, transported or disposed of . . . [citations omitted]."

An ordinance cannot under the guise of the police power, but really to effect some purpose not within its power interfere with a person's individual lawful property rights. *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533

(1951) ; *Hertz Drivurself Stations, Inc. v. Siggins,* 359 Pa. 25, 58 A. 2d 464 (1948). Here, the record remains barren of any evidence that disposal of garbage is a nuisance in fact or complained of or directly or indirectly depreciating the value of contiguous property, or interfering with the health standards of the community. Instead, the operation is conducted according to the sanitary landfill or trench burial method. At regular intervals the garbage is covered with soil bank that was taken from the coal strip mining operations in accordance with the method approved and used by the United States Army, the Commonwealth of Pennsylvania, and the County of Allegheny. Numerous inspections have revealed no violation in appellees' operations or that a nuisance is being conducted. Even though the sustaining of Section 13 would substantially curtail the appellees in their business, which might be offensive to aesthetic tastes, this is no palpable reason or justification which would uphold the validity of such an ordinance. It is arbitrarily capricious, discriminatory and unconstitutional.

Therefore, because Section 13 has no reasonable or just foundation for its existence, the presumption of validity is not sufficient to save it.

Decree affirmed.

Mr. Justice BELL dissents.