Commonwealth *v.* Grochowiak, Appellant.

Argued October 9, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John W. Keller,* with him *Keller and Keller,* for appellant.

*George C. Eppinger,* District Attorney, with him *Frank P. Lawley, Jr.,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY HIRT, J., November 12, 1957:

The defendant was the manager of State Line Drive-In Theatre located on U. S. Route 11, in Antrim Township, Franklin County. On Sunday, June 24, 1956, he as manager, was responsibe for the exhibition in the theatre of certain motion pictures. Following the showing on the above Sunday, defendant was charged with violation of the Act of July 2, 1935, P. L. 599, §2. Section 2 of the Act, 4 PS §60, is quoted in the margin.[1]

---

[1] It shall be unlawful for any person, copartnership, association or corporation to conduct, stage, manage, operate or engage in any motion picture exhibition, regardless of whether a charge of admission is made or whether labor or business is necessary to conduct, stage, manage or operate the same, on the first day of the week, commonly called Sunday, before the hour of "two" o'clock postmeridian.

After full hearing before a Justice of the Peace he was found guilty and a penalty of a fine and costs was imposed. On defendant's petition an appeal to the quarter sessions was allowed. Hearing thereon was had before Judge DEPUY on September 2, 1956. The subject of the showings was not religious in character but the record is clear and it was not contended that the motion pictures as exhibited were obscene or offensive to good morals or that they had any effect on the peace and good order of the community. They were innocuous from every viewpoint. The court found the defendant guilty of violation of the above Act and he was sentenced to pay a fine of $50 and costs. This is defendant's appeal from the judgment of sentence.

Sunday laws, regulating human conduct under the police power of a State, are of ancient origin. A short but interesting history of this kind of Sunday legisla-

---

It shall be unlawful for any person, copartnership, association or corporation to conduct, stage, manage, operate or engage in any motion picture exhibition, regardless of whether a charge of admission thereto or incidental thereto is made or whether labor or business is necessary to conduct, stage, manage or operate the same, on the first day of the week, commonly called Sunday, after the hour of two o'clock postmeridian, unless the voters of the municipality have first voted in favor of motion picture exhibitions and sound motion picture exhibitions on Sunday as hereinafter provided, and in no case shall a person be employed as a projectionist or operator of motion pictures on Sunday or in or about motion picture exhibitions, unless he or she shall have had twenty-four consecutive hours of rest during the preceding six week days.

Any person, copartnership, association or corporation violating any of the provisions of this section shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of fifty dollars ($50.00), and in default of the payment of such fine and costs of prosecution, such person or any member or agent of any copartnership or association, or any officer or agent of any corporation, responsible for such violation, shall be imprisoned for a period of not more than ten (10) days.

tion appears in the brief of Burton R. Laub, now of the common pleas in Erie County, quoted in *Commonwealth v. Pedano*, 33 D. & C. 551. Our so-called Blue Laws, beginning with the Act of April 22, 1794, 3 Sm. L. 177, 18 PS §1991 in general setting aside the first day of the week as a day of rest, are civil legislation (Cf. *Specht v. Commonwealth*, 8 Pa. 312) although they defer to the religious concept of Sunday as a holy day. And the present act clearly is a civil regulation, although the provision for the lawful showing of motion pictures, only after 2 p.m. on Sundays undoubtedly appears in the Act in deference to the church-wide custom of Sunday morning services.

By the above 1935 Act, whether motion pictures may lawfully be shown on Sunday in any municipality was made a matter of local option. And in accordance with the Act a referendum to determine the question in Antrim Township had been submitted to the electorate, with the result, however, that the majority vote was against Sunday exhibitions of motion pictures. The local option provision of the 1935 Act is valid. *Waynesboro Sun. Movie Ref. Case*, 383 Pa. 162, 117 A. 2d 699; *Harrisburg Sunday Movie Petition Case*, 352 Pa. 635, 44 A. 2d 46. Cf. *Young v. Fetterolf*, 320 Pa. 289, 182 A. 676. The prohibition of the statute therefore must control unless unconstitutional in other respects.

Appellant, conceding the validity of Sunday legislation in general, contends that the 1935 Act is unconstitutional in that it infringes upon the right of free speech and of the press. The exhibition of motion pictures is "within the ambit of protection which the First Amendment through the Fourteenth, secures to any form of 'speech' or 'the press' " and expression by means of motion pictures is included within these constitutional guarantees. *Joseph Burstyn, Inc. v. Wilson*, 343 U. S. 495, 72 S. Ct. 777. But these rights of free speech

are not absolute rights and a general and nondiscriminatory regulation of them in the public interest usually is not open to constitutional objection. As the Supreme Court said in the *Burstyn* case: "It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places. That much is evident from the series of decisions of this Court with respect to other media of communication of ideas." In *Kovacs v. Cooper,* 336 U. S. 77, 69 S. Ct. 448, it is said: "The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community. A state or city may prohibit acts or things reasonably thought to bring evil or harm to its people." The proceedings in *Joseph Burstyn, Inc. v. Wilson,* supra, had to do with the *content* of motion pictures. That case involved the question of the constitutionality of a statute which provided for the censorship of motion pictures. The holding was "that under the First and Fourteenth Amendments a state may not ban a film on the basis of a censor's conclusion that it is 'sacrilegious' ". The present appeal does not involve the question of the content or the subject matter of the motion pictures but only the occasion when they may be shown. The 1935 Act has nothing to do with what the pictures portray, the story they tell or the philosophy they stress; content is not within the purview of the Act. For this reason the authorities on which appellant relies have no application. In general a restriction on free speech which merely limits the right as to time or place does not infringe upon the constitutional guarantees. And the 1935 Act in prohibiting the showing of motion pictures on but one day of the week without any limitation on their exhibition on the remaining six days is not unreasonable. The State in this case had

the power to prohibit public amusements and exhibitions on Sunday.

There is no merit in the contention that appellant has been denied due process and equal protection on the ground that the Act is discriminatory in its terms because it fails to include in its subject matter all worldly amusements on Sunday, subjecting them to a prohibition similar to that against the showing of motion pictures. *Bothwell v. York City,* 291 Pa. 363, 370, 140 A. 130. The appellant has relied on the principle of *Yick Wo v. Hopkins,* 118 U. S. 356, 6 S. Ct. 1064. That decision was considered in *People v. Oreck et al.,* 168 P. 2d 186 and the argument of a denial of equal protection of the laws was discarded in this language: "Here the claimed discrimination is that those engaged in horse race betting are being prosecuted while those who run other types of illegal betting establishments are not. Such type of discrimination, if discrimination it be, is not within the rule of the above cases. It is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not." The discussion in *Bothwell v. York City,* supra, p. 370, is to the same effect.

Finally, there is no merit in the contention that the Act works an unreasonable classification. The relevant governing principles are stated in *Seabolt v. Commissioners,* 187 Pa. 318, 323, 41 A. 22, thus: "Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subject classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom,

but good faith in the classification." That is a correct statement of the present law in Pennsylvania. Cf. *Garrett v. Turner*, 235 Pa. 383, 389, 84 A. 354; *Nat. Transit Co. et al. v. Boardman*, 328 Pa. 450, 197 A. 239.

If people of a community want Sunday movies they must say so by a majority vote. Without such vote on a referendum there is no valid constitutional objection to the 1935 Act; it is within the scope of the lawful exercise of the police power of the State. *Bothwell v. York City*, supra; *Com. v. Sherman et al.*, 14 D. & C. 4.

Judgment affirmed and the defendant is ordered to appear at a time to be fixed by the lower court, for compliance with the sentence imposed.