Whitehall Township *v.* Oswald, Appellant.

Argued April 22, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Paul A. McGinley,* with him *W. Hamlin Neely,* for appellants.

*Thomas J. Calnan, Jr.,* with him *Robert N. St. Mary,* for township, appellee.

*G. Thomas Miller,* and *Bailey, Pearson, Miller & Bolton,* for amicus curiae.

*W. Byron Sorrell,* and *White, Sorrell & Williamson,* of the Washington, D.C., Bar, and *G. Thomas Miller,* for amicus curiae.

OPINION BY MR. CHIEF JUSTICE JONES, June 3, 1960:

The Township of Whitehall, in Lehigh County, a township of the first class, enacted an ordinance, known as "The Trailer and Trailer Park Ordinance", which provides, inter alia, that "No person shall occupy any trailer coach for sleeping or living quarters outside a duly permitted trailer park" and further prescribes penal sanctions for violations.

Following enactment of the ordinance, Gerald Oswald and John Reiss, the appellants herein, purchased and occupied house trailers, as homes, upon

land situate in the township outside "a duly permitted trailer park." The chief of police of the township, at the direction of the board of commissioners, gave notice to Oswald and Reiss that they were in violation of the ordinance and subject to the fines and penalties provided therein. Without any effort to enforce the ordinance against Oswald and Reiss, the township filed a petition in the court of common pleas of the county praying a declaratory judgment affirming the constitutionality of the ordinance in its application to Oswald and Reiss. The basis for invoking the court's jurisdiction of the township's declaratory judgment petition was, as averred therein, that "there is a conflict of judicial opinion as to the constitutionality of ordinances of the nature and type" of the Whitehall Township Ordinance in question. The court took jurisdiction of the petition and adjudged and decreed that the ordinance is constitutional. From that judgment Oswald and Reiss have appealed.

The present proceeding is unique in at least one particular for which no parallel is to be found in the annals of Pennsylvania's jurisprudence. The plaintiff township, a political subdivision, seeks, by means of a declaratory judgment petition, a judicial pronouncement upon the constitutionality of its own voluntary enactment. It is as unorthodox as it is extraordinary for a municipality to enact an ordinance and then forthwith supplicate a court's determination of its constitutionality. To construe the Uniform Declaratory Judgments Act as granting such a right to a governmental body would be to encourage legislative irresponsibility and to constitute the courts the legal advisers of municipalities with respect to their legislative enactments. If a question concerning the constitutionality of an ordinance is to be passed upon by a court, it can be done properly only as the sequence of an actual controversy based upon a sufficient allega-

tion by a complainant that he is being harmed or threatened with imminent harm in violation of his constitutionally protected rights.

The draftsman of the Uniform Declaratory Judgments Act labored under no misapprehension as to the impossible situation that would result if a municipality were permitted to test by a declaratory judgment proceeding the constitutionality of one of its own enactments. Such a right, the statute does not extend to a municipality or other political subdivision clothed with legislative power. The right to question the construction or validity of a municipal ordinance by a declaratory judgment proceeding, in appropriate circumstances, and obtain a declaration of the petitioner's rights, status, or legal obligations under the ordinance, is restricted by Section 2 of the Act of June 18, 1923, P.L. 840 (12 PS §832) to "Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise. . . ." Certainly, it can not reasonably be said that the plaintiff township's "rights, status, or other legal relations" have been adversarily affected by its own deliberately intended enactment.*

Would anyone contend that, by virtue of the above quoted statutory provision, the legislature conferred upon the Commonwealth a right to resort to a declaratory judgment proceeding to have an act of assembly construed or validated? To what end could such a procedure be designed? For what purpose would an ordaining public body subject to judicial scrutiny its

---

* The case of *White Oak Borough Authority v. McKeesport*, 379 Pa. 266, 108 A. 2d 760, is obviously not in point. That case was concerned with a controversy between the parties litigant as to their respective rights and liabilities under a written contract. The case did not question the validity of a municipal ordinance or any other legislative enactment. In fact, the plaintiff Authority did not even possess legislative power.

.

own legislative enactments which are presumptively constitutional as a matter of law? And, it has been expressly recognized that "The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances whether they be enacted by the council of a city, town or borough or by the supervisors of a township": *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 71, 141 A. 2d 851. So long as an ordinance is unquestioned, its constitutional validity remains established. The plaintiff township was, therefore, without standing to invoke the jurisdiction of the court below for the purpose of having the constitutionality of its trailer ordinance adjudicated in a declaratory judgment proceeding.

Whether such a proceeding is available to the appellant trailer-owners for testing the constitutionality of the ordinance or whether they must lay themselves open to prosecution for violations of its provisions, and possible heavy pecuniary loss, in order to question the ordinance's validity, are problems not presently before us. Nor can we assume to pass upon them in this proceeding without creating an unwarranted and procedurally disruptive precedent.

Judgment vacated and petition dismissed at the plaintiff's costs.

DISSENTING OPINION BY MR. JUSTICE BELL:

Section 2 of the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, provides: "Any person . . . whose rights, status, or other legal relations are *affected** by a statute, municipal ordinance, . . . may have determined any question of construction or validity arising under the . . . statute, ordinance, . . . and ob-

* Italics throughout, ours.

tain a declaration of rights, status, or other legal relations thereunder." "Person" has been interpreted to include a township and an authority: *White Oak Borough Authority v. McKeesport*, 379 Pa. 266, 108 A. 2d 760.

I agree with the majority opinion that we certainly should not ordinarily entertain a declaratory judgment proceeding sur a petition by a Township to interpret the meaning or to adjudicate the constitutionality of a Township Ordinance. The Courts of Pennsylvania, for practical reasons and as a result of practical experience, have found it wise and necessary to restrict declaratory judgment proceedings; otherwise the Courts would be swamped with such proceedings, many of which would not or could not or do not include a statement of material facts which were then in existence or subsequently arise. However, this is one of those cases where (§5 of) the Ordinance creates such unusual and inevitable problems and hardships, and the threatened injury to landowners and to present and prospective trailer coach owners is so immediate and so great that this declaratory judgment proceeding is, in my opinion, both appropriate and justifiable.

The present Ordinance is in reality a trailer park Ordinance, but it includes in its provisions (Section 5) : "No person shall occupy any trailer coach for sleeping or living quarters outside a duly permitted trailer park* . . ."

Why should this declaratory judgment proceeding be allowed?

A man may own 1, 5, 10 or 25 acres, with no residence nearby, and yet be prohibited by the Ordinance from occupying on his own property his own trailer coach for sleeping or living quarters. He may be

---

* The reason for this prohibition is obvious—very few people, if any, would like to have a trailer home next door to their home.

willing, if arrested and convicted by a justice of the peace, to pay a small $10 or $50 fine (because he is in the nature of a first offender or for any other reason) without questioning the validity or constitutionality of the Ordinance; or, as in this case, the authorities may not arrest the offender and consequently the constitutionality of the Act may never be raised by a favored offender who is not arrested or is penalized by a small fine. What is the likely or inevitable result? A person may wish to buy land and also to purchase a trailer and to use it for sleeping or living quarters on his own land. The record does not disclose the market value of land in this Township but land, depending on its location and the times, may cost $1,000 to $20,000 an acre; a trailer coach costs many thousands of dollars. Under the majority opinion it is clear that such a prospective purchaser would be without status, legal or equitable, and would have no equitable or legal remedy to test the constitutionality of this Ordinance until (1) he had spent a small fortune to buy land and/or a trailer coach, and (2) he was thereafter arrested and convicted of violating this Ordinance—even though, as in the present case, the Board of Commissioners or other proper official gave him advance notice that the use of such a trailer coach would be in violation of the Ordinance and would subject the violator to the fines and penalties provided therein.* This is so obviously inequitable and unjust as to make it clear that the present action is the only action which is available (a) to protect trailer coach owners and purchasers, and (b) to render equity and justice.

---

* A violator ". . . shall, upon conviction . . . be sentenced to pay a fine or penalty of not less than Ten ($10.00) Dollars nor more than One Hundred ($100.00) Dollars for *each* offense, or in default of payment shall be committed to the . . . county prison for a term of not less than ten (10) days nor more than ninety (90) days."

The law is accurately stated in *Lifter Estate,* 377 Pa. 227, 228, 103 A. 2d 670: "In Eureka Casualty Co. v. Henderson, 371 Pa. 587, 92 A. 2d 551, Mr. Chief Justice STERN said (pages 591, 592): '. . . whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is purely a matter of judicial discretion . . . It was said in Capital Bank and Trust Company's Petition, 336 Pa. 108, 111, 6 A. 2d 790, 792: ". . . the vital factor in the assumption of jurisdiction is the presence of antagonistic claims indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy: . . ." '

"The facts in the instant case bring it within the aforesaid requirements; the problems involved are so unusual and difficult, litigation was so imminent and inevitable, and the peril to the Federation was so great and immediate that we consider this to be an appropriate matter for a declaratory judgment."

In the instant case defendants have been informed they were violating the Ordinance and were subject to the fines and penalties provided therein. Litigation is both imminent and inevitable, the circumstances are important and very unusual, the peril to defendants, as well as to all owners and prospective owners of trailer coaches, is immediate and great.

A Damocletian sword (as well as severe criminal penalties) is suspended threateningly over the head of the present defendants and of other landowners and prospective landowners who wish to use, or buy and use, a trailer coach for sleeping or living quarters on their own land, no matter how far that trailer may be removed from any other dwelling. One may appropriately ask whether many authorities throughout Pennsylvania haven't forgotten the Constitutional guarantees of private property which for centuries has

been one of the great pillars or hallmarks of Western civilization.

The facts and circumstances of this case are so unusual and the threatened injury is so great and so inevitable, that I am convinced this is a proper case for a declaratory judgment—indeed the proceeding is not only justifiable but *necessary*. It is necessary because there is no adequate remedy in equity or at law—except by a declaratory judgment proceeding— which can render equity and justice and adequately protect present trailer coach owners from this cumulative penal Ordinance and prospective landowners and/or trailer coach owners from irreparable injury. Section 5, *as drawn,* has no reasonable and necessary relation to public health or safety (or even to general welfare) and is clearly and unquestionably unconstitutional.* *Schmalz v. Buckingham Township Zoning Board,* 389 Pa. 295, 132 A. 2d 233; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587; *Menger v. Pass,* 367 Pa. 432, 80 A. 2d 702.

I would hold that this declaratory judgment proceeding is appropriate and justified; I would declare §5 of the Ordinance unconstitutional; and I would reverse the case on the merits.

Mr. Justice MUSMANNO joins in this dissenting opinion.

---

* This does not mean that a trailer Ordinance which is clearly related to health or safety would not be Constitutional—such a decision will be made when and if such a problem is presented to the Court.