## Commonwealth ex rel. Hines, Appellant, *v.* Winfree.

Argued November 15, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN and ALPERN, JJ.

*John A. Reilly,* with him *Catania, Gorbey, Reilly & Nolan,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 28, 1962:

This appeal challenges the validity of an ordinance of the City of Chester which prohibits the making of unnecessary noises and regulates the use of sound trucks and sound amplifying machines on or about the highways of that municipality.

On September 26, 1950, the City Council of Chester passed an ordinance entitled "An ordinance to prohibit the making of unnecessary noises and regulating the use of sound amplifying machines". That ordinance, in pertinent part, provides: "SECTION 2. No person, persons, firm or corporation shall play, use, operate, or knowingly permit to be played, used or operated any radio receiving set, musical instrument, phonograph, sound amplifier, loud speaker, or other machine or device for the reproduction of sound, upon property (real or personal) or premises owned, occupied or used by him, them, or it, which is not measured and regulated by decibels so that the sound coming from such machine cannot be audibly heard at a

distance greater than one (100) hundred feet from the property or premises wherein such machine or device is located. Nothing herein contained shall be construed to prohibit the playing of a band or orchestra in any concert hall, auditorium, club room or public park. SECTION 3. No person shall operate a sound truck or loud speaker on the streets or public places of the City of Chester without first obtaining a permit therefor from the Council of the City of Chester. Such permit shall be for a period of one day only. Such permit shall not be transferable from person to person or from sound truck to sound truck and may not be extended as to the date it shall be used, nor shall any permit for the operation of such sound truck be issued for use earlier than 8 o'clock A.M. or later than 9 o'clock P.M. of the prevailing local time. Every application for a permit shall be accompanied by a permit fee of One ($1.00) Dollar." That ordinance further provides the manner of applying for a permit for the use of a sound truck or loud-speaker, prescribing, inter alia, that a permit application must be accompanied by a "certificate from an engineer that such amplifying machine is so equipped and regulated by decibels, that the sound coming from such machine cannot be audibly heard at a distance greater than one (100) hundred feet from the sound truck or amplifying machine." For a violation of this ordinance a minimum fine of $50 and a maximum fine of $200 is prescribed; in default in payment of the fine and costs, imprisonment for a minimum period of 30 days and a maximum period of 90 days in the county jail is prescribed.

On December 22, 1955, the Council of Chester amended Section 3 of the ordinance to provide for an increase in the amount of the permit fee from $1 to $25 per diem.

On August 3, 1959, during a political campaign, the Democratic Campaign Committee Chairman applied

for a permit to use one sound truck from August 3, 1959 to and including November 3, 1959, excluding Sundays, (a period of 80 days) and submitted a check for the permit fee in the amount of $80 and to this application no certificate of an engineer was attached. The application was rejected for certain stated reasons: (a) the application did not state the make and license number of the truck to be operated; (b) a certificate of an engineer was not attached; (c) a proper fee was not submitted; (d) a permit could be granted for a period of one day only so that an application must be filed for each day for which a permit is desired. No further application was made.

On August 28, 1959, Harry V. Hines, Democratic candidate for mayor, addressed a political rally in Chester from a sound truck using sound amplifying equipment without a permit* and, thereafter, a summons was issued to Hines to appear before a magistrate on September 3, 1959. After a hearing, Hines was found guilty of a violation of the ordinance and sentenced to pay a fine of $50 and costs. On advice of counsel, Hines refused to pay the fine and costs and was committed to jail.

Hines then petitioned for a writ of habeas corpus alleging the ordinance is invalid and unconstitutional: (a) the terms of the ordinance are vague, indefinite and impossible to comply with; (b) it is impossible to comply with Section 3(i) because it is scientifically impossible to regulate sound equipment by decibels so that sound cannot be heard audibly at a distance of more than 100 feet from the sound truck; (c) the ordinance requirement that a permit be issued only for one day at a time is oppressive and bears no relationship to the health, welfare and good morals of the community; (d) the $25 permit fee is excessive and bears no

---

* It is not contended that Hines did not violate the ordinance.

reasonable relationship to the costs of regulating sound trucks and sound amplifying equipment; (e) as enforced, the ordinance discriminated against Hines. After a hearing, the Court of Common Pleas of Delaware County held that the ordinance was a proper exercise of police power and valid and, therefore, dismissed Hines' petition for the writ of habeas corpus. From that order the present appeal was taken.

In this area of the law certain principles are well settled: (1) freedom of speech is a fundamental right which is not subject to impairment by state action[1] (*Gitlow v. New York*, 268 U. S. 652; *1621, Inc. v. Wilson*, 402 Pa. 94, 102, 103, 166 A. 2d 271); (2) such right of speech does not, however, prohibit a municipality, in the exercise of its police power for the safety, convenience, health and well being of its citizens, from *reasonably regulating* the use of sound trucks and other voice amplifying equipment on its highways[2] (*Kovacs v. Cooper*, 336 U. S. 77, 69 S. Ct. 448; *Com. v. Geuss*, 168 Pa. Superior Ct. 22, 76 A. 2d 500, aff'd. 368 Pa. 290, 81 A. 2d 553, appeal dismissed 342 U.S. 912, 72 S. Ct. 360); (3) a municipal ordinance is *presumptively* valid (*Archbishop O'Hara's Appeal*, 389 Pa. 35, 50, 131 A. 2d 587; *Lutz v. Armour*, 395 Pa. 576, 578,

---

[1] A municipal ordinance constitutes state action and is within the prohibition of the Fourteenth Amendment of the U. S. Constitution; *Lovell v. City of Griffin*, 303 U. S. 444, 58 S. Ct. 666.

[2] However, a "sound truck" ordinance which establishes a "previous restraint" on free speech with "no standards prescribed for the exercise" of the discretion of the officer issuing the permit is invalid: *Saia v. New York*, 334 U. S. 558, 68 S. Ct. 1148. "Sound truck" ordinances have been upheld in *Posner v. Cooper*, 83 N.Y.S. 2d 460; *Brachey v. Maupin*, 277 Ky. 467, 126 S.W. 2d 881; *Maupin v. City of Louisville*, 284 Ky. 195, 144 S.W. 2d 237; *Haggerty v. Associated Farmers, Inc.*, 44 Cal. 2d 60, 279 P. 2d 734; *Haggerty v. Kings County*, 117 C.A. 2d 470, 256 P. 2d 393; *State ex rel. Nicholas v. Headley* (Fla.), 48 So. 2d 80; *Brinkman v. Gainesville*, 83 Ga. App. 508, 64 S.E. 2d 344.

151 A. 2d 108; *Whitehall Twp. v. Oswald,* 400 Pa. 65, 68, 161 A. 2d 348) and it is to be presumed that in passing the ordinance the municipal officers acted in good faith (*Bilbar Construction Co. v. Easttown Twp.,* 393 Pa. 62, 71, 141 A. 2d 851); (4) the amount of the fee required for the issuance of a permit to use a "sound truck" under the ordinance must bear a reasonable relationship to the cost to the municipality of the regulation and enforcement of the ordinance. (*Olan Mills, Inc. v. Sharon,* 371 Pa. 609, 92 A. 2d 222; *Flynn v. Horst,* 356 Pa. 20, 28, 51 A. 2d 54; *American Baseball Club v. Phila.,* 312 Pa. 311, 316, 167 A. 891, appeal dismissed 290 U. S. 595, 54 S. Ct. 128).

First, Hines contends that the ordinance is invalid because it is "vague, indefinite or uncertain". There can be no doubt that, if a statute or an ordinance is so "vague, indefinite or uncertain" that the courts are unable to determine, with any reasonable degree of certainty, the intent of the legislative body, such statute or ordinance is invalid: *Murray v. Philadelphia,* 364 Pa. 157, 176, 71 A. 2d 280; *Willcox v. Penn Mutual Life Ins. Co.,* 357 Pa. 581, 595, 55 A. 2d 521; *Miller v. Belmont Packing & Rubber Co.,* 268 Pa. 51, 63, 110 A. 802. The test is whether the language of the legislation clearly reveals the intent of the legislative body and the. instant ordinance certainly meets that test. This ordinance clearly shows that it was the intent of the councilmanic body to protect the citizens of Chester from such "unnecessary noises and sounds" as would occasion them discomfort and annoyance and to regulate the use of sound trucks and sound amplifying equipment in and about the public highways so as to decrease accident hazards, insure the orderly movement of traffic and avoid traffic congestion on such highways. This ordinance does not *prohibit* sound trucks and sound amplifying equipment in and about the highways; on the contrary, this ordinance *permits* the use

of such trucks and equipment under certain conditions which are clearly set forth and with which compliance is neither onerous nor difficult.[3] This contention of Hines is without merit.

Hines next urges that the requirement in the ordinance that a permit be issued on a *per diem* basis is so unreasonable as to invalidate the ordinance. Ordinances which are regulatory in nature must be reasonable : *Lutz v. Armour,* 395 Pa. 576, 151 A. 2d 108; *Warren v. Philadelphia,* 382 Pa. 380, 115 A. 2d 218; *Adams v. New Kensington,* 357 Pa. 557, 55 A. 2d 392. The instant ordinance does not limit or restrict a permit to only one day of the week, the month or the year; it simply provides that each permit will be issued on a *per diem* basis and, if additional permits are required, such permits will be issued on a *per diem* basis. The proper enforcement of this ordinance requires that the police be alerted to the exact date or dates and the hours on each date when the sound trucks and sound amplifying equipment will be used in or about the public highways so that additional police can be directed to the area where the sound trucks and sound amplifying equipment will be used. For instance, the use of such sound trucks and sound amplifying equipment on days or at hours when the traffic is normally heavier than on other days or hours will

---

[3] In this connection, Hines argues that the requirement of a certificate from an engineer that the amplifying machine is so equipped and regulated by decibels that the sound coming from such machine cannot be heard at a distance greater than 100 feet from such machine is scientifically unsound. The record indicates that the municipal officials who issued these permits did not require "a certificate of audibility compliance to be issued by a highly technically trained engineer, but as drawn and administered merely by a person having the knowledge to operate the amplifying equipment" and, despite testimony to the contrary, there is sufficient testimony of record to indicate that sound amplification equipment can be controlled by *decibels.*

require greater police activity to see that traffic moves in an orderly manner and without congestion. We cannot see any element of unreasonableness in this requirement of the ordinance and, on the contrary, believe that it properly serves the over-all purpose of the ordinance. The mere fact that one who seeks to use trucks and equipment over a number of days must fill out a separate application for each permit for each day does not vitiate this ordinance.[4]

Hines' next argument is that the permit fee of $25 *per diem* is excessive and bears no reasonable relationship to the cost of enforcement of the ordinance. In *American Baseball Club v. Philadelphia,* supra (p. 316), we stated: "A license fee is valid if the amount thereof is reasonably commensurate with the actual cost to the municipality for special services rendered: [citing cases]". Judge (later Chief Justice) HORACE STERN, speaking of a license fee in *Arronson v. Phila.,* 16 Pa. D. & C. 427, aptly said: "Such a charge is not regarded as in any sense a revenue-producing measure or as the imposition of a tax. It is merely making the person who causes the expense pay for it." In determining the reasonableness of the amount of a license fee two principles must be borne in mind: (a) the party who claims that the amount of a license fee is unreasonable has the burden of so proving[5] and (b) in matters of this character municipalities must be given reasonable latitude in fixing charges to cover anticipated expenses to be incurred in the enforcement of the

---

[4] Courts of another jurisdiction have upheld the validity of an ordinance which *prohibited* the use of sound trucks and sound amplifying equipment in a certain specified area where there was normally heavy traffic and where hospitals, sanitaria, etc., were located: *Brachey v. Maupin,* 277 Ky. 467, 126 S.W. 2d 881; *Maupin v. City of Louisville,* 284 Ky. 195, 144 S.W. 2d 237.

[5] See also: *Adams v. New Kensington,* supra, p. 562.

ordinance and all doubt should be resolved in favor of the reasonableness of the fee: *Wm. Laubach & Sons v. Easton,* 347 Pa. 542, 550, 32 A. 2d 881.

In the court below Hines offered *no evidence* to show that the $25 daily fee was unreasonable whereas the City offered evidence in support of the reasonableness of the fee. After hearing, the court below, in this respect, made the following findings of fact: "11. When permits are issued, notice of issuance is forwarded to the police department to alert police cars in all districts to supervise and check the operations of the sound truck and to answer complaints of annoyance from the public. 12. All policemen supervising sound truck operations must leave their regular duties for this purpose; and a patrol car of two men must remain with the truck the entire permit time of 8:00 a.m. to 9:00 p.m. requiring constant policing. 13. Policing sound trucks has required not only the services of patrolmen, but sergeants, captains, the chief of police, desk sergeants and radio operators. 14. Each patrolman earns $2 per hour salary, and at 13 hours for two patrolmen; the expense to the City is Fifty-two ($52) Dollars per permit day not considering the cost of gasoline, oil, the use of the patrol car, services of the City Clerk in issuing the permit, the radio operator alerting the patrolmen, and any superior officers who are involved in enforcing the Ordinance. 15. The enforcement of the Sound Truck Ordinance requires more time and effort by the police than any other City Ordinance. 16. Four regular police and additional auxiliary police were required to be present when [Hines] used sound truck equipment without a permit on the occasion when he was found guilty."

The findings of fact of a trial court, approved by the court en banc, unless arbitrarily made or manifestly erroneous or improper, are binding upon us unless such findings lack sufficient evidentiary support: *Lerch Estate,* 399 Pa. 59, 159 A. 2d 506; *Claughton v.*

*Bear Stearns & Co.,* 397 Pa. 480, 488, 156 A. 2d 314. We have carefully examined the instant record and from such examination we conclude that the court below did not act arbitrarily or commit error and there is sufficient evidence of record to support the findings of fact. Under such circumstances we have no alternative other than to affirm the conclusion of the court below that the amount of this permit fee is reasonable.[6] We find nothing in *Murdock v. Pennsylvania,* 319 U. S. 105, 63 S. Ct. 870 or *Busey v. District of Columbia,* 138 F. 2d 592, relied upon by Hines, which interdicts this permit fee or brings it within the classification of "a flat tax imposed on the exercise of a privilege granted by the Bill of Rights."

Hines further argues that the ordinance was so discriminatorily administered and enforced as to deprive him of his right to due process. Hines contends that from April 17, 1958 to September 9, 1959 only eight permits were issued under this ordinance but that, during that same period, various religious and charitable organizations, such as the Salvation Army, used sound amplifying equipment without securing a permit and without being arrested.

Hines points out in his brief that a "police regulation is subject to the equal protection of laws clause" (*Atchison, Topeka & Santa Fe Railway Co. v. Vosburg,* 238 U. S. 56) and that arbitrary "discrimination between persons in similar circumstances is a denial of due process of law" (*Wallace v. Currin,* 95 F. 2d 856). With those principles we agree. He then contends that the instant situation is ruled by *Yick Wo*

---

[6] In *Posner v. Cooper,* 83 N.Y.S. 2d 460, a sound truck ordinance which required payment of a $25 daily permit fee was upheld, the court stating: "Though the court might hold the opinion that a lower fee might be adequate, it cannot hold it so unreasonable as to seriously affect the right of free speech as compared with the right of peace, quiet and privacy."

*v. Hopkins,* 118 U. S. 356 but with that we disagree. In *Yick Wo,* the Supreme Court of the United States considered the validity of a Los Angeles ordinance which authorized certain supervisors to permit or withhold at will permits to operate laundries in wooden buildings; the record indicated that over 200 persons— all Chinese—were refused permits while 80 other persons—all non-Chinese—were granted permits. One of the grounds upon which the Court held invalid the ordinance was that it was enforced or administered "with an evil eye and an unequal hand." *Yick Wo* is clearly inapposite: in *Yick Wo* discrimination was clearly proven while in the instant case Hines relied on surmise, rather than proof, of discrimination.

Even if the Salvation Army, various churches and charitable organizations did violate this ordinance without prosecution therefor, such fact would not aid Hines for he clearly violated this ordinance and the defense that others had violated this ordinance with impunity cannot avail Hines: *Commonwealth v. Grochowiak,* 184 Pa. Superior Ct. 522, 527, 136 A. 2d 145. Furthermore, even if there were proof, which there is not in the case at bar, that the police in arresting Hines and in not arresting others were improperly motivated, such would not aid Hines insofar as the validity of the ordinance is concerned.

In *Commonwealth v. Bauder,* 14 Pa. D. & C. 571, aff'd. per curiam, 188 Pa. Superior Ct. 424, 145 A. 2d 915, it was contended, inter alia, that enforcement of a state statute was discriminatory in that others were allowed to violate the law without prosecution and the court held that such fact, even if true, did not render invalid the statute.

Several other contentions made by Hines have been fully considered and found without merit.

In view of Hines' contention that his constitutional right to freedom of speech has been impaired or

restricted in an improper manner by the provisions of this ordinance, we have most carefully examined the provisions of the ordinance and are convinced that such limitation as this ordinance might place upon Hines' right to freedom of speech has been fully approved by the United States Supreme Court in *Kovacs v. Cooper,* supra. We are of the opinion that this ordinance represents a lawful and reasonable exercise by the City of Chester of its police power for the protection of the welfare, comfort and well being of its citizens and that the ordinance is valid and constitutional.

Order affirmed. Costs on Hines.

Mr. Justice EAGEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

In *Saia v. People of State of New York,* 334 U. S. 558, 92 L. Ed. 1574, 68 S. Ct. 1148 (1948), the United States Supreme Court in a five to four decision held the ordinance therein invalid because it failed to provide any standard or any other criteria for the chief of police in exercising his discretion in granting or refusing the permit, thereby making it unconstitutional on its face.

Shortly thereafter, the United States Supreme Court had before it an ordinance which prohibited the use of sound trucks making "loud and raucous noises" on the public streets. It was upheld by the United States Supreme Court in *Kovacs v. Cooper,* 336 U. S. 77, 93 L. Ed. 513, 69 S. Ct. 448 (1949). Three of the majority upheld its constitutionality because the intent was to prevent "loud and raucous noises" from conflicting with the peace and quiet of the citizens and was not intended to suppress any individual's right of free speech. One justice concurred because he thought

the United States Supreme Court could not devise terms on which the sound truck should be allowed to operate; another concurred holding that an absolute prohibition of sound equipment would be valid. The three dissenting justices were of the opinion that the *Saia* case governed and that the ordinance was unconstitutional.

I recognize that in matters such as this, one is required to balance the various community interests, but I am most mindful of the impact of the First Amendment of the Federal Constitution on this kind of a situation. I believe that the $25 a day license fee required in the instant ordinance is so burdensome that this ordinance is unconstitutional on its face. Rather than regulating the use of sound trucks for the interest of certain members of the community, it completely ignores the interest of other members of the community in having them and by the imposition of a burdensome license fee proscribes their use.

The fact that the City of Chester produced testimony to the effect that the $25 license fee did not cover the cost of enforcement of the ordinance is not material. The privilege of exercising a constitutional right should not be evaluated on a cost plus basis. Police power legislation is not designed to provide a profit for government. Here, the $25 a day license fee effectively deprives the defendant of his First Amendment guarantee, hampers the promotion and exchange of ideas, impinges on free discussion and restricts political activities and free elections.

It is distasteful to think that candidates for both high and low offices are required both to cater to the whims and caprice of the chief of police and to pay $25 a day in order to pursue their campaigns. My conclusion makes it unnecessary to discuss the other valid contentions of the appellant such as the scientific impossibility to comply with the ordinance (see 58 Yale

Law Journal 335 (1949)), or the discrimination of its enforcement. (see *Yick Wo v. Hopkins,* 118 U. S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886)).